# CLYDE BACHMAN v. QUINCY, OMAHA AND KANSAS CITY RAILROAD COMPANY, Appellant.

Division One, July 30, 1925.

1. **ISSUES: Measured by Pleadings and Instructions.** Alleged grounds of negligence abandoned by plaintiff drop out of the case as thoroughly as if they had never been pleaded, and the issues are then measured by the pleadings and the instructions, however broad the field may be under the evidence.

2. **EVIDENCE: Sufficiency.** If the sufficiency of the evidence is challenged by defendant, it must appear on appeal that there was no substantial evidence produced to support the verdict for plaintiff. The appellate court does not weigh the evidence to determine where the greater weight lies; that is a matter resting purely with the trial court. If there was produced at the trial substantial evidence to support the verdict returned, upon proper instructions, and the verdict is within the issues alleged, it is useless to urge on appeal a demurrer to the evidence.

3. **NEGLIGENCE: Street Crossing: No Signals: Obstructed Track.** Where buildings and the tops of automobiles obstructed a view of the track in the direction from which the belated train was coming, all the way up to the track, and plaintiff, traveling on a public street in an automobile, before attempting to cross the track, listened and looked in both directions, and saw no approaching train, substantial evidence tending to show that defendant failed to continue to sound the engine whistle at intervals, after it was sounded at a point distant eighty rods from the crossing, and a failure (in lieu of the failure to sound the whistle) to ring the engine bell, entitles plaintiff to recover for injuries received when, in attempting to cross the track, his automobile was struck by the train.

4. ————: **Dangerous Street Crossing: Maintenance of Warning Signal: Recognition of Duty.** Whether it was the duty of the defendant railroad company to maintain an electric signal bell at a dangerous street crossing, to warn pedestrians and automobilists of the approach of trains, is immaterial, where defendant recognized such to be its duty to the public and installed such a bell for such purpose, and plaintiff and others relied upon the bell and its warning; for having installed it, it was defendant's duty to keep it in repair, so that the public would not be deceived thereby; and

Bachman v. Railroad Co.

the evidence showing that the signal bell, thus installed and for a time maintained, was permitted to be out of repair and inoperative for a sufficient length of time for defendant to have put it in working order, defendant is chargeable with negligence, when sued for personal injuries by the driver of an automobile, who in reliance upon the signal bell and unable to see the approaching train because of obstructions, attempted, in a sudden emergency and as the only method of averting a collision, to cross the track, and was struck by the train.

5. ————: ————: ————: **Pleading Recognition of Duty: Invitation to Public.** Where plaintiff in his petition, after charging that defendant had installed and maintained at the dangerous street crossing an electric signal bell to warn travelers of approaching trains, and that he had looked before crossing the track and saw no indication from it of an approaching train, it was not error to refuse to strike out the further allegation that "when said bell was not ringing and said signal was not moving, it was an invitation by defendant to all persons to cross said track, and was a representation by defendant to said persons that no train was approaching said crossing." It being apparent from the context that the word "invitation" was used in the sense that the traveler had the right to presume that there was no approaching train, the objection that the word pleaded a conclusion rather than a fact is too attenuated to deserve real consideration.

6. **Excessive Verdict: Imminent Peril: Injuries from Own Act.** Where a traveler, by the negligence of a railroad, is placed in a position of peril, and must, hurriedly and without consideration, choose his course of conduct, his duty to extricate himself from such peril is not to be gauged by ordinary care, but the railroad company is liable for the injuries incurred although they result from his own act.

7. ————: **Not Assigned as Error: Waiver.** Where appellant has made assignments of error, all other matters not included in them are deemed to have been waived. Where defendant's motion for a new trial contained nineteen grounds, and in its brief only seven assignments of error are made, and excessiveness of verdict is not one of them, this court is not required to consider a point made in the brief that the verdict is excessive, not even if one of the assignments is that "the court erred in overruling the motion for a new trial."

8. **Negligence: Instruction.** The instruction covering the whole case for plaintiff, set out in full, is *held*, to be carefully drawn and cautiously worded.
   310 Mo. Sup.—4.

Bachman v. Railroad Co.

9. ———: **Reliance upon Signal Bell: Proof.** An instruction submitting to the jury, as a part of plaintiff's case, the question whether he relied upon an electric signal bell, which had been maintained at the dangerous street crossing to give warning of approaching trains and permitted to become inoperative for a sufficient length of time to impute notice to defendant of its defective condition, is supported by plaintiff's testimony that he was familiar with the signal and how it operated, and before crossing in trying to determine, by looking and listening, whether a train was coming, he looked at the signal bell and it gave no signal and he did not know it was out of repair. Such testimony shows, in connection with the other facts, that, while he took other precautions, he also relied upon the bell, although he did not expressly say he had relied upon it. And especially was such instruction not error where it did not hypothesize plaintiff's right to recover exclusively upon a failure of the bell to give him warning, but also required the jury to find that the engine whistle was not sounded or its bell rung, that his view was obstructed, and that he looked and listened, and where an instruction given for defendant told the jury that "the fact that the crossing signal bell was not ringing did not give plaintiff the right to drive upon the track without looking and listening for a train" and that if he "drove into the danger zone without looking or listening," etc., their verdict must be for defendant.

10. ———: **Evidence: Absent Photographs.** Where doctors took X-ray pictures of plaintiff for the purpose of properly treating him, and in their depositions testified what the pictures showed, and that they could not produce them because the near-by hospital with which they were connected prevented their removal therefrom, it was the privilege of defendant to compel the production of the pictures at the trial if desired, and it was not error to permit the doctors to testify what the pictures showed.

11. ———: **Instruction: Dangerous Crossing: Warning Bell: Ordinary Care.** Where a railroad installs a signal bell at a dangerous street crossing a traveler has a right to rely upon its warning; and instructions requiring of the traveler the exercise of ordinary care for his own protection, and, notwithstanding he looked at the bell and saw that it did not give him warning, to use ordinary care to look and listen for an approaching train nevertheless, were as favorable to the railroad company as it could reasonably ask, and even more so.

12. ———: ———: ———: **Duty to Install.** Instructions which proceed upon the theory that the defendant railroad was under no obligation to install and maintain a signal bell system at the dangerous street crossing to give warning to travelers of approaching trains, are prejudicial to the traveler who was injured in at-

tempting to cross. The duty of defendant is measured by the dangerous condition, and a very dangerous crossing indicates a duty to install and maintain a signal warning or to maintain a watchman to give travelers warning of approaching trains.

13. ———: ———: ———: **Disowning Recognized Duty.** The defendant cannot disown a duty which it had fully recognized. Where defendant had recognized it was its duty to install an electric bell at a dangerous street crossing to give warning to travelers of approaching trains, by installing such a bell, and had failed to maintain it in working order after the public had become familiar with it, instructions telling the jury that "the fact that the crossing signal device was not operating is immaterial" and "you will wholly disregard all evidence and remarks regarding the said crossing signal device" are palpably wrong in theory.

Corpus Juris-Cyc. References: **Appeal and Error,** 3 C. J., Section 1462, p. 1330, n. 44; Section 1474, p. 1338, n. 26; Section 1507, p. 1364, n. 77; Section 1540, p. 1391, n. 14; 4 C. J., Section 2573, p. 675, n. 67; Section 2830, p. 844, n. 66; Section 2834, p. 853, Section 59; Section 2838, p. 861, n. 24; Section 289, p. 918, n. 42. **Evidence,** 22 C. J., Section 761, p. 672, n. 25. **Negligence,** 29 Cyc., p. 521, n. 43, 44, 46, 48. **Railroads,** 33 Cyc. p. 942, n. 54; p. 986, n. 10, 11; p. 1028, n. 43, 47; p. 1053, n. 86; p. 1102, n. 23; p. 1104, n. 32; p. 1130, n. 85; p. 1132, n. 98; p. 1138, n. 28, **Trial,** 38 Cyc. p. 1707, n. 98.

Appeal from Grundy Circuit Court.—*Hon. Leonidas B. Woods,* Judge.

AFFIRMED.

*R. E. Kavanaugh* and *J. G. Trimble* for appellant.

(1) Motion to strike out parts of plaintiff's petition should have been sustained. The portions sought to be stricken out were not "plain and concise statements of the facts constituting a cause of action" as required by Sec. 1220, R. S. 1919. They were conclusions and allegations of "duty;" matters for the court and not for the jury. (2) It was error to admit the depositions of Drs. Hain and Thwaites in regard to condition shown by an X-ray picture. (a) The picture was not identified as being a picture of the back of the plaintiff. (b) There was no evidence to connect the supposed rotation (twisting) of the vertebra with the accident. (c) The picture itself was the best evidence. (d) Defendant's

counsel was denied the right to see the picture and cross-examine the witnesses in regard thereto. It was error to refuse to give the peremptory Instruction A asked by defendant at the close of all the evidence in the case. (a) Plaintiff was not struck by the train. His unconsciousness and convulsions were purely hysterical. (b) Plaintiff rushed to the point of accident without having listened at all, without having looked at all and without having his car under control so as to be able to stop when danger confronted him. His own negligence was the proximate cause of the collision. Hall v. Railroad, 240 S. W. 175; Evans v. Railroad, 233 S. W. 397; State ex rel. v. Bland, 237 S. W. 1018; Rollison v. Railroad, 252 Mo. 525; Alexander v. Railroad, 233 S. W. 44; Monroe v. Railroad, 249 S. W. 644. In view of the physical facts plaintiff cannot be heard to say he looked and did not see. If he looked, he saw. Stotler v. Railroad, 204 Mo. 633; Kelsay v. Railroad, 129 Mo. 372; Hayden v. Railroad, 124 Mo. 566; Roseman v. Rys., 251 S. W. 106. He does not claim to have listened. He claims he looked east only once when more than one hundred feet from the track. This is not sufficient. The duty to look is "a continuing one until the crossing is reached." Kelsay v. Railroad, 129 Mo. 372; Stotler v. Railroad, 204 Mo. 638; Evans v. Railroad, 233 S. W. 399. (4) Instruction numbered 1 was erroneous. (a) It submitted to the jury the question of whether plaintiff relied upon the crossing signal bell when there is no evidence in the case that he did rely on the bell. (b) It told the jury if plaintiff saw the signal bell was not operating he had a right to rely on no train being in close proximity unless he had actual knowledge the train was approaching. He had no right to rely on the signal bell and device (if it be presumed he did so rely) to the exclusion of looking and listening. He neither looked nor listened. Blain v. Railroad, 184 S. W. 1142. (c) It submitted to the jury the question of whether defendant knew the crossing bell was out of order and had had time to repair it. There was no evidence as to how long the bell had

been out of order, no evidence that defendant knew the fact and no evidence there had been time to repair it. Instructions must not be broader than the testimony. Degonia v. Railroad, 224 Mo. 589. (d) In effect it told the jury plaintiff was under no obligation to show he exercised any degree of care in approaching the track, the burden being upon the defendant to prove he did not exercise care. A railroad is a place of danger which one must approach with proper care. It is itself a warning not to be disregarded. A plaintiff must show he used due care. Prima-facie he was negligent. Sanguinette v. Railroad, 196 Mo. 489; Stotler v. Railroad, 204 Mo. 635. (5) Plaintiff's instruction numbered 3 was erroneous in that it failed to inform the jury plaintiff was under obligation to look and listen. In general terms it instructed the jury that the negligence which would prevent him recovering must be such as directly contributed to his injury and consisted of want of ordinary care, leaving to the jury to find out for themselves what ordinary care under the circumstances meant. Prima-facie plaintiff was negligent. It was his duty to prove he was not. Sanguinette v. Railroad, 196 Mo. 489; Stotler v. Railroad, 204 Mo. 635. (6) Defendant's requested instructions C, D, E, F and G should have been given. (a) The fact the crossing bell was not ringing did not excuse plaintiff from looking and listening for an approaching train and Instruction C should have been given. Blain v. Railroad, 184 S. W. 1142. (b) Instruction D but declared the law as declared many times by this court, that, if one by looking and listening can become aware of an approaching train, he must look and listen and if he does not, he cannot recover. It was error to refuse this instruction. (c) Plaintiff did not claim to have looked at but one place. When the coming of the train could no longer be ignored he was in a place of safety, if he had not approached the track unprepared to stop. It was error to refuse defendant's Instruction F. Evans v. Railroad, 235 S. W. 399. (7) The court erred in giving instructions 1 and 2 of its own motion.

(a)   Instruction number 1 in effect tells the jury plaintiff did not have to look or listen if defendant had installed a signal appliance.  Also permitted the jury to find plaintiff relied upon the crossing signal bell when there was no evidence to that effect.  It did not tell the jury it was plaintiff's duty to look for a train more than once. (b)   Instruction numbered 2 was erroneous in that it told the jury, in effect, plaintiff must have had actual knowledge of the approach of the train before he could be guilty of negligence.  One may be guilty of negligence in failing to know.

*A. G. Knight* and *Higbee & Mills* for respondent.

(1)   The court properly overruled appellant's motion to strike out parts of plaintiff's petition.  Clearly the portions at which the motion was leveled were proper allegations of facts and of plaintiff's cause of action. Rep. Rubber Co. v. Adams, 213 S. W. 81.  Appellant by failing to stand on its motion and by answering over abandoned the same.  Crecelius v. Ry. Co., 284 Mo. 37; Scovill v. Glassner, 79 Mo. 449; White v. Ry. Co., 202 Mo. 539.  (2)   It was not error to admit the depositions of Doctors Hain and Thwaites in regard to the X-ray picture and the conditions shown by it.  (a) Dr. Thwaites took the picture and handed it to Dr. Hain who, with Thwaites, then examined it to learn the condition of plaintiff's back, for the purpose of properly treating it. (b)   Dr. Hain acted upon the information thus acquired; placed plaintiff in a plaster-of-paris cast, which extended around his body from the arm pits to the hips; he remained in it ten or eleven weeks and his injured back was greatly improved.  (c)   Plaintiff's back was severely injured, he was bed-fast and the picture was taken with a view of enabling the doctor to correct the condition.  It was merely a part of the diagnosis.  (d) Plaintiff could not obtain the X-ray at the deposition. Witnesses cannot be compelled to produce papers, etc., at a deposition.  Ex parte Mallinkrodt, 20 Mo. 493; State

ex rel. v. Taylor, 268 Mo. 312; State ex rel. v. Klene, 276 Mo. 206. (e) No objection was made at the time of taking the deposition that the picture was not present and no request was made by defendant to be allowed to examine it. The objection was first made at the trial. (f) Dr. Bert Parrish of Kirksville, took an X-ray picture with him to the trial and it was introduced in evidence. This picture was taken several months after the injury to enable him to learn his then condition. Defendant certainly was not denied free access to any picture under the control of plaintiff. (g) Plaintiff consented to be and was examined by two doctors employed by defendant while the trial was in progress. They took X-ray pictures of plaintiff's back which revealed an injury thereto similar to that testified to by Doctors Hain and Thwaites and also as shown by the X-ray picture produced by Dr. Bert B. Parrish and explained by him. Both of defendants' hired physicians testified he had an injury to his back and stated they were of the opinion plaintiff was then suffering with certain ailments. Clearly this evidence was all cumulative and there could be no prejudicial error. (h) Plaintiff was taken to the Grim Hospital, which was one of the defendant's hospitals, at the request of defendant's claim agent. Defendant failed to call any of the doctors or the attendants who were its doctors. It could have done so or it could have used Doctor Henry as a witness, if it so desired. Epstein v. Ry. Co., 250 Mo. 1. (3) Defendant's demurrer to the evidence was properly overruled. (a) Plaintiff was guilty of no negligence. Any ordinarily careful person would have acted as he did, as his view was completely shut off until he was within about eight feet of the track, as shown by plaintiff's evidence, so the front end of the car was within about four feet of the track. No warning was given by the whistle or bell, and such failure to sound the alarms was the proximate cause of the collision. Hoff v. Wabash, 254 S. W. 874; Kaemmer v. Wells, 252 S. W. 730; Clooney v. Wells, 252 S. W. 72; Shaffer v. Railway, 254 S. W.

257; State ex rel. v. Trimble, 254 S. W. 846; King v. Railway, 263 S. W. 828; Pryor v. Payne, 263 S. W. 982; Walchter v. Railway, 113 Mo. App. 281; Baker v. Railway, 122 Mo. 553. (b) The electric crossing bell and wig-wag gave no warning of an approaching train; plaintiff knew of this signal and in the past had never known it to be out of order; it had not been working for several days but plaintiff did not know this fact. Defendant did not dispute it had thus been out of order, or deny it had such knowledge. Sufficient time had expired for defendant to know such fact. Its station employees failed to testify. It must have known. State ex rel. v. Trimble, 260 S. W. 1000; McCord v. Schaff, 279 Mo. 558; Thomas v. Life Assur. Soc., 198 Mo. App. 553. (4) Plaintiff's Instruction 1 was properly given. He testified he looked and listened for a train and seeing none looked at the electric crossing signal; that it was not ringing and the wig-wag was not moving; that relying thereon he proceeded. He did not rely on it alone, but relied on all conditions combined, viz: not seeing or hearing a train, no warning from the electric signal, no warning from the bell or whistle on the engine. He did not rely on any one to the exclusion of the others, but upon all these facts. Monroe v. Ry., 280 Mo. 483; Hamm v. Ry., 211 Mo. App. 460; Gengleback v. Ry., 236 S. W. 1092; Kaemmer v. Wells, 252 S. W. 730; Clooney v. Wells, 252 S. W. 72; Hoff v. Wabash, 254 S. W. 874; Shaffer v. Ry., 254 S. W. 257; State ex rel. v. Trimble, 254 S. W. 846; Baker v. Ry., 122 Mo. 553; King v. Ry., 263 S. W. 828; Pryor v. Payne, 263 S. W. 982; Brice v. Payne, 263 S. W. 1005.

GRAVES, J.—Action for personal and property injuries occasioned by a collision between plaintiff's automobile and defendant's railway train in the city of Kirksville, Missouri. There were some four grounds of negligence pleaded, including the humanitarian doctrine. After the trial of the case the alleged negligence, as submitted by plaintiff, were limited to two grounds, i. e. (1)

the failure of defendant to give warning of bell or whistle as it approached a public street crossing, and (2) that defendant had always maintained an alarm bell at such crossing, and had so maintained it for some time, to the knowledge of the plaintiff, but that upon this occasion the defendant, although it had ample notice of the defect in such bell, had failed to put and keep the same in repair, so that it would signal the approach of a train upon defendant's tracks. These two alleged failures are the ones submitted by the plaintiff, and the only ones relied upon by plaintiff in the instructions. So, it would seem, that the humanitarian rule, as well as the excess-of-ordinance speed (as grounds of negligence) are abandoned, and questions concerning them are not now before us. The instructions for plaintiff are short, and we quote them. This because they must be the foundation for all complaints here. They read:

"1. The court instructs the jury that while the law did not require or compel defendant to install and maintain an electric signal at the point where its said railroad crossed or intersected Franklin Street, in the city of Kirksville, Adair County, Missouri, but if you find and believe from the evidence, that defendant did install and maintain an electric crossing alarm or signal at said crossing, and if you further find that said Franklin Street was a public highway or street in said city, and if you further find and believe from the evidence that the plaintiff knew and relied upon said signal, to warn him of the approach of any train or trains on defendant's said track, at said crossing, you are then instructed that it became and was the duty of the defendant to use reasonable care to properly maintain said signal so that said signal would duly warn plaintiff of the approach of any train or trains, on defendant's said track at said crossing, and that plaintiff had a right to rely upon no train being in close proximity to said crossing, if said crossing bell was not ringing, unless plaintiff knew said train was approaching, or by the exercise of ordinary care and diligence might have so known.

"You are therefore instructed that if you so find and if you further find and believe from the evidence that on the morning of October 11, 1922, plaintiff was driving his automobile in a northerly direction on Franklin Street in said city, and approaching said crossing, and was struck and injured, and his automobile was damaged on said crossing by defendant's train, and if you believe from the evidence that the plaintiff was unable to see the approach of defendant's train on account of obstructions until he was within a few feet of defendant's main track, and if you further find and believe from the evidence that defendant carelessly and negligently failed to cause the bell on said engine to be rung continuously for eighty rods before said engine reached said crossing, and that defendant negligently and carelessly failed to cause the whistle on said engine to be sounded at intervals for a distance of eighty rods before said train reached said crossing, and if you further find and believe from the evidence that the defendant negligently and carelessly permitted said crossing bell or signal to be and remain out of order and repair, and that the same would not operate, and that said crossing signal had been in such condition for a sufficient length of time for defendant, by the exercise of ordinary care on its part, to have discovered that said crossing signal was in such condition, and to have repaired the same prior to said collision (if you find there was a collision), and if you further find that plaintiff knew defendant had installed and had been maintaining said signal and relied thereon, and that plaintiff had no knowledge that said crossing bell or signal was out of order, and would not operate, and if you further find that said crossing bell or signal was not ringing or giving any warning to plaintiff of the approach of defendant's said train, then you should find for the plaintiff, provided you further find that in so driving upon said crossing, plaintiff was in the exercise of the degree of care required of him as defined in other instructions, and that he was not guilty of negligence directly contributing to his injury as defined in other instruc-

tions, and you are further instructed that the burden of proving contributory negligence on the part of the plaintiff, rests upon the defendant to prove the same by the greater weight of the credible evidence, and in determining whether or not plaintiff was guilty of contributory negligence, or was in the exercise of due care, as defined in other instructions, you will take into consideration all the facts and circumstances shown by the evidence.

"2. The court instructs the jury that it was the duty of the defendant, its agents and servants in charge of and operating its locomotive engine and train in approaching a public street or crossing to sound the whistle on said locomotive at intervals for eighty rods next before said crossing is reached or to cause the bell on said locomotive to be rung continuously for eighty rods next before said crossing is reached, and if said locomotive whistle was sounded only at point about one-quarter of a mile distant from said crossing and the other signals were not given, as above stated, then defendant did not comply with its duty in the premises and was guilty of negligence.

"3. You are instructed that negligence on the part of plaintiff which will prevent him recovering in this action, must be such as directly contributes to his injury and consists of the want of ordinary care. Ordinary care as used in these instructions means that degree of care which may be reasonably expected of an ordinarily prudent person in plaintiff's situation at and just before the time the accident occurred, and in determining whether plaintiff was using such care you should take into consideration all the circumstances surrounding him at the time.

"4. The court instructs the jury that if your verdict is for the plaintiff, in assessing his damages you will take into consideration his age, the injuries sustained by him, if any, and the physical and mental pain and anguish endured by him on account of said injury, if any, together with such as he will necessarily endure in the future re-

sulting from his said injury, if any, also his loss of time and of his earning capacity, if any, together with his medical and hospital bills incurred in an effort to cure himself of his injuries, if any, and assess his damages at such sum as you believe from the evidence will reasonably compensate him for the same, and if you find for the plaintiff for the damages to his said automobile, you will allow plaintiff such sum therefor as you find and believe will be a reasonable compensation for the damages to said automobile, if any, not to exceed the sum of $20,-000 for his personal injuries and not to exceed the sum of $600 for his automobile, in all not to exceed the sum of twenty thousand and six hundred dollars.

''5. The court instructs the jury that nine or more of your number may return a verdict; if all concur your verdict shall be signed by your foreman only; if nine or more and less than the entire panel concur your verdict shall be signed by those concurring or agreeing thereto.''

We have omitted the instructions to the form of the verdict. It suffices to say that plaintiff had a verdict for $10,300 and from a judgment upon such verdict the defendant has appealed. The points made by defendant, and the pertinent facts, we leave to the opinion.

I. This case can and should be simplified. When the plaintiff abandons certain alleged grounds of negligence, they drop out of the case as thoroughly as if they had never been pleaded. Plaintiff's instructions indicate clearly to what grounds of negligence he clings. These are the only ones for determination here. Cases are simplified and shortened in this manner, and no effort should be made to go beyond the issues made by the pleadings and the instructions. If the instructions are narrower than the pleadings, we must confine ourselves to the issues made by the instructions. In other words the issues must be measured by both the pleadings and the instructions, however broad the field may be under the evidence. One other thing as a fore-

Measuring Issues.

**Demurrer.** word, is, if the sufficiency of the evidence is challenged by defendant, it must appear that there is no substantial evidence to support the verdict. This court does not weigh evidence to determine where the greater weight lies. That is a matter purely resting with the trial court. If there is substantial evidence upon which the verdict may be founded, counsel are wasting their time and the time of this court in urging a demurrer to the evidence. This situation too often occurs. The proper issues made by pleadings, evidence and instructions will be taken up in the course of the opinion.

II.  On the two grounds of negligence, upon which the case was finally submitted to the jury, there is no question as to the right of the plaintiff to have the jury to pass upon those questions. In other words, there is substantial evidence (for plaintiff) tending to show that **Negligent Acts.** there was a failure to continue to sound the whistle at intervals, after it was first sounded at the statutory point, and a failure (in lieu of failure to sound the whistle) to ring the bell. This evidence made a case for the jury upon one question of alleged negligence. The verbatim details of this evidence . serve no useful purpose. Franklin Street in Kirksville is one of the principal streets of the city, so far as traffic is concerned, and runs north and south. The railroad crosses it at practically right angles, such railroad running east and west. Plaintiff was on Franklin Street coming from the south and going toward the north. In approaching the tracks, when a train was coming from the east (as was the train which struck plaintiff's automobile and injured him) the conditions to the east of Franklin Street are material. There were obstructions which precluded a clear view to the east, the direction from which the train was coming. These consisted of a building on the east side of Franklin Street, as well as a string of automobiles (with tops up) between the street line of this building and the main line of defendant's tracks. Plaintiff was driving a Dodge automobile, and says that

he looked in both directions, before he attempted to cross
the tracks, and that as to the east of Franklin street, he
looked at the only point where a train could have been
seen, and saw no approaching train.   He says that he
heard no approaching train, at any time.   There was a
point south of the brick building .(on the east side of
Franklin Street) where a view of a train from the east
could be seen.   It was at this point that he looked, and
there was no other point where a train could be seen,
except a point within eight to ten feet of the main track
(the track upon which the colliding train came) and this
limited view was obstructed by a line of automobiles
(tops up) evidently waiting for the train which was com-
ing, but which was past due.

The personal testimony of the plaintiff was to the
effect that defendant maintained at this dangerous
crossing a signal bell, the purpose of which was to ad-
vise approaching pedestrians or automobilists of the ap-
Warning Signal.   proach of a train, but that such bell gave
no signal of an approaching train.   In
this situation he approached the tracks, and as he said,
when he could first see the train, he was suddenly placed
in the dilemma of determining whether or .not he could
stop his car in time to avert the collision, or whether or
not he could clear the track by speeding up his car.
His evidence is to the effect that he could not stop his
care in time to avert the collision and that he was forced
to the other alternative of speeding up his car in order
to clear the track.   At least he (under pressed circum-
stances) chose the latter course, and his car was caught
in a collision, and as a result he was injured.   These are
the real pertinent facts, from the plaintiff's viewpoint.
It is from his side of the evidence that we must judge
the action of the court in submitting the case to the jury.
Other evidence shows the maintenance of this signal
bell, and further shows that it was out of order at the
time, and had been out of order for such time as to have
given the defendant ample time to have had it in work-
ing order prior to the date .of injury.   These are vital

facts to be considered in the discussion of other questions urged. But they, without further note, suffice to show that plaintiff made a case for the jury upon both questions of negligence submitted. The crossing (owing to the surroundings) was a dangerous one. So much so that a signal bell had been installed. We need not stop to discuss the question as to whether or not the defendant owed to the public such a duty. For this case, it suffices to say that defendant recognized its duty by installing the signal bell, and such recognition of duty imposed the further duty of keeping it in repair, so that the public would not be deceived thereby. In this case it appears that plaintiff and others using this street relied upon this signal bell, which they had the right to do. So, under, practically undisputed facts, the plaintiff made a case for the jury. Matters of error, or alleged error will be noted in subsequent paragraphs.

III. A motion to strike out certain portions of the plaintiff's petition was filed and by the court overruled. The plaintiff had said in his petition, after charging the installation and maintenance of this signal bell, that he looked and saw no indication from it of any approaching train: ''That when said bell was not ringing and said signal was not moving, it was an invitation by defendant to all persons to cross said track, and was a representation by defendant to said persons that no train was approaching said crossing.''

Pleading Invitation.

This was but an isolated sentence in a long allegation of the plaintiff, to the effect that defendant had installed such signal bell, and that, after installing it for the benefit of the public, it was negligence not to keep it in repair. The objection is as to the use of the word ''invitation.'' This word is used in the pleadings more in the sense that, in the absence of the ringing of this bell, the traveler had the right to presume that there was no approaching train. Absent the ringing of the bell it was in a sense an invitation to the traveler to proceed

upon his journey. This objection is too attenuated to deserve real consideration. The objection was that there was a pleading of a conclusion rather than a fact.

This motion to strike out, founded upon like reasons, struck at two other portions of the petition. They have no more substance than the one we have outlined. To elaborate, would be at the expense of brevity in opinions. The motion was properly overruled upon all grounds.

IV. Taking in order the questions briefed and argued here, the next one is that the verdict is excessive. Usually this comes as a last proposition in cases of this kind. However, it is a question which has to be met in most of the personal injury cases, and it is immaterial as to the order adopted by counsel. There were two men in plaintiff's car. Plaintiff was the driver. It is urged that he jumped out, "ran fifty yards and fell, and when he was picked up he was apparently unconscious and shortly afterwards had some kind of a 'fit.' He received no personal injuries. His convulsions were hysterical." Such are the charges of appellant. These charges must bear the scrutiny of the evidence. Where a person, through the negligence of a railroad, is placed in a position of peril, and must thereby choose (hurriedly and without deliberate consideration) his course of conduct, he is not strictly bound to such a course of conduct as would a man not subject to imminent peril. We need not cite cases for hornbook law. In such case the defendant is liable for the injuries incurred, although they result from the act of the plaintiff. To re-state, what has often been stated, if through the negligence of a defendant, a plaintiff has been placed in peril, such plaintiff is not bound to any ordinary degree of care in extricating himself from such peril. His acts are not gauged by the acts of ordinary men under different circumstances. His acts must be gauged by the circumstances surrounding him, and if the circumstances so surrounding him are the result of the

*Excessive Verdict.*

negligence of the defendant, then such negligence follows to the ultimate results. Of course the acts of the plaintiff must be the acts of a reasonably careful person under the peculiar facts of his dangerous position. When this is said, all has been said.

When the plaintiff fell unconscious, and was taken to a restaurant that his wife ran, the claim agent of defendant appeared upon the scene. At the suggestion of. such agent he was taken to the Grimm Hospital. So that in this case there is no contest as between lawyers for plaintiff, and representatives of defendant, as to which were there first. Defendant's agent was faithful to his job. Plaintiff has no recollection of things after the collision. Appellant has, under the rule of this court, made an assignment of errors. These assignments are seven in number. There is no assignment of error as to the verdict being excessive. In such situation that question is deemed to have been waived. We find this general assignment of error as Assignment 7: "Overruling motion for new trial." The abstract of record shows that the motion for new trial contained nineteen grounds, and the brief shows only seven assignments of error, the last of which is the general one quoted by us,· supra. Absent a specific assignment of error as to excessiveness of verdict we are not required to · go into that question. By the general assignment that there was error in overruling the motion for new trial, we are not compelled to review each of the nineteen grounds of that motion, unless assignments of error here have been based thereon. It should be said that plaintiff was taken to a hospital which looked after patients for this defendant, and no doctors from that hospital were used by defendant.

In the foregoing proposition we have not overlooked the practice of this court (where there is no formal assignment of error at all in the brief) to treat the points made (if in form to constitute assignments of error) as assignments of error, although the practice is not in strict conformity to our rule. We have no desire to change

310 Mo. Sup.—5.

this practice, but it does not apply here. In this case the defendant did assign its alleged errors, and excessiveness of verdict was not one of them. Having made an assignment of errors, all other matters are deemed to have been waived.

V. Of the assigned errors we have thus far disposed of Number I, relating the overruling of defendant's motion to strike out parts of the petition. We have likewise disposed of Assignment No. 3, which relates to the demurrer to the evidence. There were sufficient facts shown to permit plaintiff's case to go to the jury, and the alleged matter of contributory negligence was likewise a question for the jury. As we are now on instructions we will take the questions up a little out of order. In Assignment No. 4 it is alleged that there was error in giving plaintiff's Instruction No. 1. This instruction we have set out in full, along with other instructions given for the plaintiff.

To our mind this Instruction No. 1, for the plaintiff is carefully drawn, and cautiously worded. It is not subject to the objections urged. In the objections urged it is said that the instruction submitted to the jury the question as to whether or not the plaintiff relied on the ringing of the bell, when in fact there is no evidence that he so relied. This objection overlooks the evidence. True it is, that plaintiff does say that he tried to determine whether or not a train was coming by looking and listening, but he further says that he was familiar with this signal bell, and how it operated, and that he also looked at it for a signal of an approaching train, and it gave no signal. It might be that in words he did not say that he relied upon the bell, but all facts testified to by him show that, while he took other precautions, he also relied upon this signal bell, and did not know that it was out of repair. It was out of repair, and according to evidence, had been out of repair for such length of time for defendant to have fixed it prior to this accident. He did not rely upon the bell exclusively, and the

instruction, when read does not so show. There was evidence tending to show that the bell had been out of order for such time as to impute notice of its condition to defendant and had the defendant promptly acted the bell (on the morning of the accident) would have signaled the approaching train, and plaintiff would not have been injured.

Instruction No. 3 is criticized under this point. It is set out in full. It goes to the question of contributory negligence, and has therein a definition of ordinary care. We see no error in this instruction. The court gave for the defendant Instruction No. 5, which reads: "The fact that the crossing signal bell was not ringing did not give plaintiff the right to drive into the danger zone without looking or listening for a train, where he could see or could hear while yet in a place of safety. If from all the facts and circumstances in evidence in the case you believe plaintiff drove into the danger zone without looking or listening for an approaching train, where by looking or by listening, he could have become aware of the approach of the train while in a place of safety, your verdict should be for the defendant." This instruction fully protected defendant upon the matter of contributory negligence.

As to the bell it may be broader than the defendant would be entitled to, but it got the full benefit of it.

VI. The suit was brought in Grundy county, and not in Adair County, where the injury occurred. It is not questioned that jurisdiction over defendant was not properly secured in Grundy County. The situation, however, furnished an excuse to take depositions, rather than have the witnesses present. The depositions of two doctors from the Osteopathic School of Medicine at Kirksville were taken. These were Drs. Hain and Thwaites. The latter was an expert X-ray picture man. He took an X-ray picture of the plaintiff, and says that he turned it over to Dr. Hain, so that he could examine it and prescribe for the patient.

*X-Ray Pictures.*

Both of these men gave depositions before the case was tried in court. Dr. Thwaites testified that he took the picture, and what the picture showed as to the condition of the lower portion of the spine. Dr. Hain testified that he got the picture from Dr. Thwaites, and examined it and told what was shown thereby. He described the same condition of the lower spine as described by Dr. Thwaites. Both testified that the school kept all such pictures, and would not permit them to take them out of the school, and hence they did not have them when testifying. Their evidence did disclose just where they were and had defendant really wanted them, it knew where to find them.

Before the trial another X-ray picture was taken of plaintiff's spine, and this picture was used in the trial. Its showing was along the same line as the one to which Drs. Hain and Thwaites testified. After Dr. Hain examined the picture, he ordered the plaintiff in a plaster cast, and the propriety of this treatment is not and cannot be questioned. Defendant urges that they had no privilege of cross-examining on account of the absent pictures.

Before the trial defendant was fully advised where it was, and could have gotten it by proper process. There can be no question of Dr. Thwaites' right to testify from his own knowledge as to what a picture taken by him showed. So far as he was concerned the picture was beyond his control. Nor do we think that Dr. Hain, who shows his perfect familiarity with X-ray pictures, was incompetent to testify what a picture showed, when he examined it in order to know what treatment to prescribe. The fact that he did not have and could not get the picture did not preclude his evidence. He told defendant where the picture was, and if it in any way contradicted the testimony of Dr. Hain, the defendant would have had it at the trial.

The process of the court was open to it, and its production could have been enforced. It would seem that defendant did not care as much for the picture then

as it does now.   No error can be predicated upon this situation.

VII.   The court of its own motion gave two instructions.   It is charged that these constituted error. The instructions answer the charge, and we quote them as follows:

"The court instructs the jury that a person in attempting to cross a railroad track in an automobile at an ordinary street crossing, where there are no signals installed by the railroad company itself to warn persons of approaching trains, it is the duty of such person so attempting to cross such track to look and listen for approaching trains, and if by looking he could see the train, or by listening he could hear its approach in time to stop the automobile or alight therefrom in safety and thus prevent the accident, it is his duty to do so.   But, in this case, if the jury believe and find that the defendant had installed a signal at the crossing of Franklin Street with the defendant's track, mentioned by the witness, for the purpose of giving alarm, to persons attempting to cross such crossing, by bell or signal, or both, and that the plaintiff was familiar with the manner in which such signal worked, the location, surroundings and circumstances of the crossing, and relied on such signal for such warning, then he was not required to exercise more than reasonable and ordinary care in looking and listening for approaching trains, that is, such care as an ordinarily prudent person would exercise under similar circumstances, having regarded to his knowledge of such crossing signal, if he did have such knowledge, and the question is solely for the jury to say whether the plaintiff did exercise such reasonable care and diligence in looking and listening for the approach of such train under the circumstances, and if the plaintiff failed to exercise such care and diligence, then the finding and verdict of the jury should be for the defendant.

"Although the jury should believe and find from the evidence that the defendant had installed an electric

signal or warning device at the crossing of its railroad track with Franklin Street, and that the same was out of repair or not in working condition at the time of the collision mentioned by the witnesses, yet this would not relieve the plaintiff of the duty of not heedlessly or recklessly attempting to cross said track, or of the exercise of reasonable and ordinary care for his own safety while attempting to cross such track; nor, would it authorize the plaintiff to enter upon such crossing or attempt to cross the same, if he saw or heard the approaching train, or knew that a train was approaching said crossing, and, even though the plaintiff's view of the track might have been obstructed by other objects yet he would not have been relieved of the duty to exercise reasonable and ordinary care for his own safety by looking and listening for an approaching train, and if he failed to use such reasonable and ordinary care, then he cannot recover and your verdict should be for the defendant.''

A reading of these instructions shows that the defendant got all, and perhaps more, then it was entitled to get. Where a railroad installs a signal bell, it might be well ruled that a traveler could rely upon the device which was installed for his safety. But these instructions go further, and required of the traveler ordinary care for his own protection, notwithstanding the signal bell. They required ordinary care to look and listen for an approaching train. These instructions were as favorable to defendant as could be asked by it. Another thought occurs to us. The instructions proceed upon the theory that defendant was under no obligations to put in a signal bell system. The character of this crossing (with its surroundings) would indicate a duty to either install a bell or keep a watchman there. All the facts indicate a very dangerous crossing, and the duty of defendant is measured by the dangerous condition. This, however, was resolved against plaintiff and for defendant, to plaintiff's injury.

VIII.   Complaint is made as to the refusal of Instructions C, D, E, F and G, asked by defendant. The

first one mentioned (Instruction C) will serve to illustrate. It reads:

"Under the facts and circumstances in evidence in this case, the fact that the crossing signal device was not operating is immaterial. Therefore, in arriving at your verdict, you will wholly disregard all evidence and remarks regarding the said crossing signal device."

Recognized
Duty.

The others follow the trend of this one. The whole theory is so patently wrong, that we need not discuss each one of them. The defendant recognized a duty upon its part to install a signal bell. The condition of the crossing indicates that there was a duty to do something for the protection of travelers. Having recognized that duty, it is clear that we need not discuss the question of duty. This whole line of instructions is a disowning of a duty which defendant had fully recognized. This defendant cannot do.

The foregoing covers all the assignments of error made by defendant. We need go no further. Defendant has reached a conclusion of the conceived errors, and has pointed them out. In this court we should go not further than the specific assignments. Each of these we have considered, and from them all we conclude that the judgment should be affirmed. It is so ordered. All concur, *Atwood, J.,* not sitting.