GLADYS E. WILLSIE, Respondent, v. GUY A. THOMPSON, Trustee in Bankruptcy of the MISSOURI PACIFIC RAILROAD, a Corporation, Appellant, No. 40949—223 S. W. (2d) 458.

Court en Banc, October 10, 1949.

*Richard H. Beeson, David P. Dabbs* and *Dean F. Arnold* for appellant.

*Paul C. Sprinkle, William F. Knowles* and *Sprinkle & Knowles* for respondent.

WESTHUES, C.—Plaintiff's husband, Leo J. Willsie, lost his life on Sunday, October 20, 1946, when an eastbound train of defendant company struck a car being driven by Willsie at a crossing in Strasburg, Cass County, Missouri. Plaintiff brought this suit for damages and a trial resulted in a verdict in her favor for $8000. The defendant appealed from the judgment entered.

The case was submitted to a jury on the charges of negligence, of failure to sound a warning and of failure of an electric signaling device to function. The questions for decision on this appeal as briefed by appellant are: the sufficiency of the evidence to sustain any of the charges of negligence submitted to the jury; contributory negligence of the deceased; and alleged errors in instruction A.

The deceased and his family lived a short distance from Strasburg. On the day in question the deceased and his wife were in Strasburg and at about 6:00 p.m. Willsie, being alone in his car, drove north on Fifth Street intending to cross the defendant's tracks. A troop train, consisting of an engine, a tender, and nineteen cars, was traveling east toward the crossing at about 65 miles per hour. It struck Willsie's car resulting in his death. The track to the west of this crossing was in a straight line for at least a mile with a slight down grade toward the east. On the west side of Fifth Street adjoining the railroad right of way and about 30 feet south of the main line track was a small coal or wood shed which obstructed a car driver's view of trains coming from the west. The roadway of Fifth Street, south of the tracks, was practically level with a slight up grade near the tracks. On the northeast side of the main line track was an electrically operated, illuminated wig-wag and bell crossing alarm signal. It was in evidence that a number of persons were engaged in an argument on Fifth Street about 75 feet south

of the railroad crossing. The constable or town marshal had been called and was there attempting to restore order. The marshal testified that he saw the deceased drive toward the tracks and accelerate the speed of the car as he reached the passing track. The marshal testified further that he thought deceased had passed ahead of the train in safety. This witness' evidence as to a warning was as follows:

"Q. 'All right, now, as Mr. Willsie passed you in his car traveling north toward the railroad track, tell the jury whether or not that traffic signal was operating.'

"A. 'No; it was out of commission.'

"Q. 'And from the time you were out there up until the time Mr. Willsie passed you and went upon the railroad tracks, tell the jury whether or not you heard the whistle from any train or the bell from any train.'

"A. 'No whistle or no bell.'

\* \* \* \*

"Q. (By Mr. Sprinkle.) 'Tell whether it (the traffic signal) was operating the day before.'

"A. 'Not after about 1 o'clock.'

"Q. 'Do you know whether any men worked on it after that?'

"A. 'A car came up there, a service car, and worked on it but they didn't seem to do it any good.'

"Q. 'Did you see a train go through later that evening and it didn't work?'

"A. 'There were two trains went through that evening and it didn't work on either one of them.'"

There were other witnesses who stated the traffic signaling device was not operating as the train was approaching Fifth Street. A number of these witnesses said that no warning was given from the oncoming train either by sounding the whistle or by ringing the bell. One of the witnesses called by the defendant testified he did not hear the bell of the traffic signal ring nor did he hear any whistle blown or engine bell sounded. This witness was positive that the red light of the traffic signaling device was on. He was in doubt as to whether the wig-wag signal was operating. A number of witnesses testified that as the train was nearing Strasburg the traffic signaling device at Fifth Street was operating; that the bell of the engine was ringing; and that the whistle was blown at intervals. In view of this conflicting evidence, these questions of fact were for a jury to decide.

 Appellant urges that plaintiff's witnesses were devoting their entire attention to the argument then in progress on Fifth Street south of the crossing and, therefore, were not conscious that a train was approaching. It is argued that their evidence as to a

negative fact was of no probative force. Citing cases as Knorp v. Thompson, 357 Mo. 1062, 212 S. W. (2d) 584, l.c. 588 (7); Crossno v. Terminal Railroad Association of St. Louis, 328 Mo. 826, 41 S. W. (2d) 796, l. c. 800 (8-10). The two cases cited, as well as others, recognize the well established rule that when a witness in close proximity to a train, conscious of its presence, and so situated as to be able to hear, testifies that no warning was sounded, it constitutes substantial evidence thereof, and is of sufficient force to make the finding of the ultimate fact a question for a jury. Knorp v. Thompson, supra, 212 S. W. (2d) l. c. 588 (6) and cases there cited. In the present case we may exclude from consideration the evidence of all witnesses who were participants in the argument and close spectators thereof. There were a number of other witnesses who were conscious of the fact that a train was approaching and testified that no warnings were given by the train crew and that the wig-wag signaling device was not operating. We, therefore, rule that a submission of the case to a jury was justified.

Appellant also makes the point that there was not sufficient evidence of knowledge on part of defendant of the fact, if it were a fact, that the electric crossing signal was not operating in time for defendant to have acquired knowledge thereof and to have made repairs. We call attention to the evidence quoted above that the day before the accident the electric device was not operating; that two men were seen working thereon; and that thereafter the device did not operate when trains passed through Strasburg. We deem such evidence sufficient notice at least to submit the question to a jury. Other witnesses testified that they saw the wig-wag signal operating while trains were passing through. It may be that the defect was such that the signal operated on some occasions and on others did not.

Appellant urges that the trial court erred in not granting a new trial because of an erroneous instruction which was the main instruction in the case. The point is made that the instruction failed to submit the question of whether the defendant had knowledge, actual or constructive, of a defect in the signaling device in time to have made the necessary repairs before the accident. In this appellant is correct. The only mention in the instruction of the time element with reference to the alleged defect in the electric device reads as follows:

". . . and if you further find and believe from the evidence that prior to the date mentioned herein that said signals for some reason did not operate and had not been operating for a time long enough for the defendant to know of said condition,"

It is evident that by the instruction the jury was authorized to find against the defendant, if the alleged defect in the electric signal device had existed for a sufficient length of time, however short, for

the defendant to have acquired knowledge thereof. The true rule, as often stated, is that the knowledge of the defective condition, either constructive or actual, must have been acquired in time so that by the exercise of ordinary care, the condition could have been remedied, or other precautions taken, prior to the occurrence of the injury. See Bachman v. Quincy, O. & K. C. R. Co., 310 Mo. 48, 274 S. W. 764, l. c. 767 (2); Robinson v. Great Atlantic and Pacific Tea Company, 347 Mo. 421, 147 S. W. (2d) 648, l. c. 649, and other cases there cited. Respondent urges that the evidence ▇▇▇ showed the electric device was out of commission at least for a day before the collision. The evidence as to this is in conflict. One of the witnesses for plaintiff testified that on the Saturday before the Sunday when the accident happened, the device was not operating; that two men came to repair it and thereafter the device functioned. In view of such conflicting evidence we must hold that the instruction was erroneous.

▇▇ Appellant also briefed another point, i.e., that the instruction excluded from the jury's consideration the defense of contributory negligence, in particular, the evidence that deceased approached the track at a rate of speed so as not to be able to stop after he reached a point where he could have seen the approaching train. The portion of the instruction complained of reads as follows:

"'. . . and if you further find and believe from the evidence that after said train came within the view of plaintiff's husband that plaintiff's husband could not stop the automobile he was driving before reaching the railroad track upon which said train was traveling, . . .'"

As above-stated, the wood or coal shed was located about 30 feet south of the tracks. The evidence disclosed that the deceased had an unobstructed view for a mile of the tracks after he passed the coal shed. Now, if any jury should find that the deceased was driving his car at such a rate of speed toward the main line of defendant's tracks, over which many trains passed at high speed, so as not to be able to stop before his car reached the track, then certainly a jury would be justified in finding the deceased was negligent. The instruction virtually removed that defense from the jury's consideration. It will be noted that the instruction authorized a verdict for the plaintiff even though the jury found that the deceased was driving at such speed. We deem the instruction prejudicially erroneous. Seithel v. St. Louis Dairy Co., 300 S. W. 280, l. c. 282 (4); Bachman v. Quincy, O. & K. C. R. Co., supra, 274 S. W. l. c. 768 (9). Appellant also urges that this instruction was in conflict with defendant's instruction which was in effect that if the jury found that as Mr. Willsie approached the track he was driving at a rate of speed so as to be unable to stop when he reached a position from which he could see the train, then the

verdict should be for the defendant. This instruction was too favor-'able to the defendant.

On the question of contributory negligence all that need be said is that if the signaling device was not operating and no warning of the oncoming train was given, then, the question of the deceased's contributory negligence was for a jury. It was expressly so ruled by this court, in Perkins v. Kansas City Southern Railway Company, 329 Mo. 1190, 49 S. W. (2d) 103, l. c. 106 (4-8).

The judgment is reversed and remanded.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the Court en Banc. *Leedy, Tipton, Conkling, Clark, Douglas, JJ.,* and *Hyde, C.J.,* concur; *Ellison, J.,* dissents in separate opinion.

ELLISON, J. (dissenting).—With some hesitation I dissent in this case. I agree with the holding in the principal opinion of Westhues, C., that the plaintiff-respondent's long main instruction A was erroneous in requiring the jury to find only that appellant's automatic red light crossing signal had been out of order long enough for appellant to *know* that fact, without further requiring the jury to find the appellant had had time to repair it. But respondent's cause of action and main instruction was not based solely on that alleged negligence: it was also ▮▮▮▮ founded on the failure of appellant's enginemen to sound the statutory warning signals for the crossing by bell or whistle. And all the assignments of negligence in the instruction were coupled together by the conjunctive "and".

Our rule under our decisions has been that even though some of the conjoined assignments of negligence are unsupported by substantial evidence, yet if any of them are so supported and the jury returns a verdict for plaintiff, the verdict will not be disturbed. This is put on the theory that the jury must have found for plaintiff on *all* the assignments in obedience to the instruction; and that their finding on any of the good assignments will sustain the verdict even though others of the assignments were not good. And if that be true of assignments which are unsupported by substantial evidence, it would seem the same ought to be true of assignments whereon there has been a misdirection in the instructions. In either case, on the hypothesis of the rule, there would still be good assignments of negligence left on which the jury could base its verdict. The rule is applied in Rinderknecht v. Thompson, trustee (Div. 2), 359 Mo. 21, 220 SW. (2d) 69, 74(11).

In that railroad-highway crossing damage case, the plaintiff truck driver's main instruction told the jury that if the defendant railroad's automatic signal was not working, *and* the railroad knew that fact long enough to have repaired the signal before the casualty, then

the plaintiff could recover. But there was *no evidence* as to how long the signal had been out of repair, or that the railroad could have repaired it within the time. The decision nevertheless held the error was not reversibly erroneous, because these two grounds of negligence were stated conjunctively.

In the instant case there was evidence on both these points. However, the plaintiff's instruction omitted the second requirement—that the railroad knew of the defect in time to repair it—which was, of course, erroneous. But there were also still other assignments of negligence in this plaintiff's instruction, namely that the railroad violated its statutory duty to sound crossing alarms by bell or whistle; they were stated conjunctively with the other assignments; and there was evidence to support them. This being true, if the "conjunctive" rule is to be followed I think it should be applied in this case.

The second finding of error in instruction A, in the principal opinion, is that it authorized the jury to find a verdict for plaintiff-respondent if they believed from the evidence that after the train came within view of respondent's deceased husband, he was going so fast he could not stop his automobile before reaching the railroad track upon which the train was approaching. There was a shed on the right-of-way which obstructed the deceased's view of the approaching train for a considerable distance. And the theory of the principal opinion is that it was contributory negligence for him to drive at such high speed that he could not stop his automobile after the train came in view; and that no matter how many assignments of negligence may have been coupled in the conjunctive in plaintiff's instruction, still if the evidence showed the deceased was guilty of contributory negligence he could not recover on any of them, as a matter of law, or at least the plaintiff's instruction would be prejudicially erroneous, citing Bachman v. Q. O. & K. C. Rd. Co., 310 Mo. 48, 66 (V), 274 SW. 764, 768 (8-9).

But it seems to me the decision holds the other way. It did expressly rule that where a motorist depended on the automatic signals at a crossing where his view was obstructed, and they were generally relied on by the public, it at least was a question for the jury as to whether the plaintiff was guilty of contributory negligence. In the instant case the plaintiff-respondent's main instruction A seems to have followed pretty closely the instruction in the Bachman case. Not only did it require the jury to find that the railroad maintained an automatic signal and the public relied on it, but it also required the jury to find the deceased was exercising the highest degree of care, before the jury could return a verdict for plaintiff-respondent.

It is well established law in this state that where a motorist approaches a blind railroad crossing where he cannot see the train, he should check his speed and watch carefully, and even stop if

necessary, to avoid being injured. But where the railroad maintains an automatic warning signal which discloses the approach of a train, the motorist may rely on the signal if it does not show the train is approaching, and relax his vigilance to some degree. It was so ruled in the Bachman case, and there are several others more or less in point: Mullis v. Thompson, 358 Mo. 230, 213 SW. (2d) 941, 944(2); Rhineberger v. Thompson, 356 Mo. 520, 526(1), 202 SW. (2d) 64, 68(7); Perkins v. K. C. So. Ry., 329 Mo. 1190, 49 SW. (2d) 103; Benton v. Thompson, 236 Mo. App. 1000, 1001, 156 SW. (2d) 739; State ex rel. Thompson v. Shain, 349 Mo. 1075, 163 SW. (2d) 967; Fritz v. Mfg. Ry. Co. (Mo. App.) 124 SW. (2d) 603; Ann. 6 N. C. C. A. (N. S.) 781; Ann. 18 N. C. C. A. (N. S.) 174, 195.