Betty WINTZ, Respondent,

v.

HYATT HOTELS CORPORATION, Crown Center Redevelopment Corporation, Hallmark Cards Incorporated, Hyatt Corporation, Concordia Project Management, Ltd., Patty Berkebile Nelson Duncan Monroe Lefebvre Architects Planners, Inc., Eldridge & Son Construction Company, Inc., Gillum-Collaco Consulting Structural Engineers, Inc., and Havens Steel Company, Appellants.

No. WD 35393.

Missouri Court of Appeals, Western District.

Jan. 22, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 5, 1985.

Application to Transfer Denied April 30, 1985.

Michael Waldeck and Stephen S. Brown, Kansas City, for appellants; Niewald, Waldeck, Norris & Brown, Kansas City, of counsel.

Robert Driscoll, Terence J. Thum and Catherine M. Hauber, Kansas City, for appellants; Stinson, Mag & Fizzell, Kansas City, of counsel.

Lantz Welch and Timothy L. Brake, Kansas City, for respondent.

Before PRITCHARD, P.J., and SOMERVILLE and KENNEDY, JJ.

PRITCHARD, Presiding Judge.

Respondent was injured by the collapse of the skywalks at the Hyatt Regency Hotel, where, on the evening of July 17, 1981, she was attending a popular tea dance with her husband. Respondent was awarded a verdict of $1,500,000, for which judgment was entered. Her husband, Francis E. Wintz, was awarded $500,000 for his loss of respondent's consortium, but he declined to accept a remittitur of $400,000, and a new trial was alternatively ordered in his case. [It is said in respondent's brief that Mr. Wintz's case was retried and the verdict was paid.]

By Point I, appellants contend that the trial court erred in refusing to grant their motion for a change of venue, because the pervasive pre-trial publicity on the skywalk incident prejudiced the residents of Jackson County against them. Respondent counters that the motion was not timely filed. The legal file shows that on May 3, 1983, the trial was scheduled to commence on July 11, 1983, with a jury in Division 2 as the number three case. Appellants' motion for change of venue was filed July 6, 1983. Respondent raised the issue of the timeliness of the motion by Point I of her brief. Although in their reply brief, appellants say that the issue of timeliness was waived by respondent's failure to respond to the motion, the supplemental brief, allowed to be filed herein, shows that she did on July 7, 1983, specifically raise the issue of timeliness under Rule 51.04. There was thus no waiver. Rule 51.04 requires that an "application for change of venue must be filed at least thirty days before the trial date or within five days after a trial date is fixed, whichever date is later." Note *State ex rel. Missouri Highway Transportation v. Johnson*, 658 S.W.2d 900, 903 (Mo.App. 1983), where a petition for change of venue was held properly denied where the trial had already begun by the selection of a jury, the court noting that cases relied upon by the commission were decided before the present Supreme Court rules which impose specific time periods for the filing of such petitions. See *Land Clearance for Redevelopment Authority v. Zitko*, 386 S.W.2d 69, 77[5] (Mo. banc 1964), where although the sufficiency of the application to change venue was not ruled upon its timeliness, the court said, "The right to a change of venue including disqualification of a judge on the ground that he is biased and prejudiced is a statutory privilege, and strict compliance with the statute and the rules of this court is essential to the sufficiency of the application. (Citing cases.)" It is also there said, quoting *George L. Cousins Contracting Co. v. Acer Realty Co.*, 110 S.W.2d 885, 888 (Mo. App.1937), " 'The courts hold that to entitle a party to a change of venue a strict compliance with the statute is essential. This is so doubtless because from the very nature of the remedy it is easily liable to serious abuses.' " Note also *State ex rel. Smith v. Journey*, 533 S.W.2d 589, 591[1] (Mo. banc 1976), holding that Rules 51.04, 51.05 and 51.06, "are of a piece; of the same matter or subject. Being pari materia, they must be considered and construed with reference to each other." And in that

connection, see *McKenzie v. McKenzie,* 646 S.W.2d 897, 899 (Mo.App.1983), holding in construing Rule 51.05 (being in pari materia with Rule 51.04 under the Smith case, supra) that a motion for change of judge made after the evidence was heard on the conscionability of a property settlement agreement and the matter was taken under advisement, was untimely. See also, *In re Marriage of Frankel,* 550 S.W.2d 896 (Mo. App.1977), holding that an application for change of judge filed on the day of hearing was not timely under Rule 51.05, "strict compliance with the provisions of the rule is essential." In this case, at least 30 days before the trial date would have required the motion to have been filed before June 10, 1983 as the later date; or within five days after the trial date was fixed, would have been about May 9, 1983. Appellants have complied with neither of said dates, and their first point must not therefore be further noticed, and it is overruled.

By Point V, appellants contend that the trial court erred in failing to grant their request for continuance after respondent introduced an x-ray taken on March 23, 1979, showing an elevation (i.e., no compression fracture) of her T–12 vertebra, while x-rays taken after the skywalk incident showed that she suffered a compression fracture of that vertebra. Appellants claim, and the evidence tends to show that the x-ray with the notation on the medical chart (Plaintiff's Exhibit 21), that it was taken on March 23, 1979, was not furnished to their counsel, and that x-ray was a surprise to them. The testimony of Dr. Leslie Wiscombe, who was respondent's physician long before the skywalk incident, supports appellants' contention that they were not supplied the March 23, 1979, x-ray (Plaintiff's Exhibit 30) prior to that time. Sometime in April, 1983, he supplied appellants with respondent's medical records, which did not include the x-rays, or his notation on the medical chart that one was taken on March 23, 1979, with the notation "AP and L Lumbar negative" on the chart under the date of March 23, 1979. What prompted Dr. Wiscombe to make the addition to his records was a call from Mrs. Wintz asking for her x-rays. At that time he had his girl go back through the x-ray file and she subsequently found a set of x-rays. Dr. Wiscombe promptly put them on the viewbox, and made the notation on the chart. He testified that he gave the x-rays he found to Mrs. Wintz. The chart notations were made after Dr. Wiscombe's receipt of the letter of appellants' counsel requesting copies of his medical records, and he did not notify appellants' counsel of the addition to his records.

Orthopedic surgeon, Brian Healy, M.D., treated respondent for her injuries which she received in the skywalk collapse. When his deposition was given on June 22, 1983, he gave his opinion that respondent's mid-back complaints were not related to the injuries at the Hyatt. Appellants' examining physician, Frederick W. Reckling, M.D., testified by deposition that an x-ray of respondent's back taken in September, 1982, showed a compression of the anterior aspect of the vertebral body at T–12, and he reported that it was 40 to 50 per cent compressed. Dr. Healy's assistant, Dr. Beall, examined respondent on December 9, 1981, at which time she had acute low back pain. Dr. Beall noted that the x-ray showed an old compression fracture in the lower dorsal area (the same as the thoracic area) where she was not symptomatic—the symptoms did not correlate with what Dr. Beall saw objectively, they were lower than the fracture, which fracture was probably older than a month or any age older.

Dr. Healy, at the time of his deposition, had not seen the x-ray taken by Dr. Wiscombe back in March, 1979, and it was produced to him on the morning he was to testify at trial. Based upon the x-ray, Dr. Healy changed his previous deposition opinion and testified that respondent's compression fracture (of T–12) was caused by the skywalk incident.

Respondent contends that appellants were twice advised of the fact that x-rays were taken of her back, once on her second deposition and once on pretrial conference. The portions of respondent's deposition were recited by her co-counsel during a

bench conference: She was asked, " 'Did any doctor treat you for back complaints besides Dr. Lichtor and Dr. Meyer before July 17, 1981? ANSWER: 'Back strain, Dr. Wiscombe did a little manipulation, he is an osteopath, but that still was when I was in the Bridal Department—' So on— 'Did he take any x-rays—I am sure he did at some time or another, I don't remember whether he took back x-rays or whether it was chest x-rays. I really don't remember that.' " It appears that during pretrial conference, respondent's counsel advised appellants' counsel that he had an x-ray which showed the T–12 intervertebral disk at its full height. "I asked him where it was and his response was, 'Discovery is completed', and he admitted yesterday further saying, 'That is for me to know and you to find out.' " It does not appear how long before trial, when the compression fracture x-ray was first revealed, that the pretrial conference took place.

According to appellants' counsel, he first learned of the existence of the x-ray showing a fully elevated T–12 vertebra during pretrial conference when respondent's counsel told him about it. Appellants' counsel searched respondent's medical records that night and found no evidence that an x-ray of her mid-back had ever been taken. He first learned of its source when Dr. Wiscombe's medical custodian testified on the second day of trial.

■ Although appellants requested a mistrial based upon the heated colloquy that counsel had over the source of the x-ray, saying that the jury heard it, the trial court found that it was speculation that the jury overheard the colloquy. The trial court therefore did not err in refusing to grant a mistrial.

Appellants requested a continuance, or at least an adjournment, to enable their medical expert, Dr. Reckling, to examine the x-ray, Plaintiff's Exhibit 30, and further to examine respondent, as to the source of the compression fracture of T–12, and whether it might have been suffered in the skywalk collapse. Clearly, under all of the facts above recounted, the production of the x-

ray on the day of trial, coupled with the change in Dr. Healy's opinion, came as a surprise to appellants. They had no knowledge, prior to trial, that the x-ray would be a basis for claiming further injury by reason of a compression fracture of T–12. The previous deposition of Dr. Healy indicated that the compression fracture had no relation to the skywalk incident, yet, based upon the x-ray, he changed his opinion and testified that the fracture was the result of the skywalk collapse.

The testimony of Dr. Wiscombe seems to point quite clearly to the fact that upon discovering the additional x-ray of respondent's back, he did not send it to appellants' counsel, along with the addition to the medical chart showing "AP & L Lumbar negative" under the date of March 23, 1979. Instead, he gave the x-ray(s) to respondent, Mrs. Wintz. Respondent's deposition testimony was equivocal as to whether Dr. Wiscombe had previously x-rayed her back. The information revealed by respondent's counsel to appellants' counsel during pretrial conference revealed only that there existed a T–12 x-ray showing its proper elevation, and that x-ray was not produced under the claim that discovery was completed, and the information was "For me to know and you to find out".

At 17 Am.Jur.2d Continuance, § 23, p. 143, these general statements are made: "The fact that a party, without fault on his part, is taken by surprise by the conduct of his adversary and would be unjustly prejudiced if forced to proceed without being given an opportunity to prepare to meet the new situation, is a good ground for continuance. Surprise alone is not sufficient; an applicant must show that he would be prejudiced unless a continuance is granted." Among cases there cited from other jurisdictions holding it to have been prejudicial error to refuse a continuance or an opportunity to meet surprise matter are these: In *Hays v. Viscome, et al.,* 122 Cal.App.2d 135, 264 P.2d 173 (1953), a doctor (a Dr. Berryman) examined plaintiff at defendants' request, yet they did not call him as a witness, it appearing that he

would have testified that the plaintiff was seriously injured. The jury returned a small verdict for plaintiff. The court held that it was an abuse of discretion to refuse plaintiff a short continuance in order to bring in Dr. Berryman as her witness, the court having instructed the jury that no inference either way could be drawn as to which side might have called him; *Gaglio v. Yellow Cab Company*, 63 N.J.Super. 206, 164 A.2d 353 (1960), where the court held that the trial court erred in not granting defendant an amendment to its pretrial order as to unavoidable accident as a defense in a res ipsa loquitor case where plaintiff could have produced an expert to meet the new defense by a short continuance; *Habershaw, et al. v. Palfrey*, 72 R.I. 448, 53 A.2d 449 (1947), where the evidence, contrary to trial declarations, injected a new issue of plaintiffs' recovery of lost profits, the court holding that defendant was entitled to claim surprise and to have a reasonable time to obtain expert witnesses to meet the new claim; and *Greenberg v. Karris*, 80 Ill.App.2d 270, 225 N.E.2d 490 (1967), where plaintiff did not, on deposition, reveal the name of a witness, called at trial, who testified that the deceased driver had been drinking in a bar. The court held that it was prejudicial error to permit the witness to testify until the defense had a reasonable time to make a pretrial investigation.

In this state, upon the issue of surprise and denial of a continuance to meet the matter, *Missouri Public Service Company v. Argenbright*, 457 S.W.2d 777 (Mo.1970), is significant. In that case there was an amendment to the petition in condemnation which enlarged condemnee's damages, and took away the Utility's contentions that it would make a reasonable use of its access rights to the power line easement. The court held that it was prejudicially erroneous to deny the Utility a continuance so it could consider the effect of the amendment and consult with its engineers to determine whether or not the access provision could be eliminated or to confine the ingress and egress to the ends of the right-of-way. At page 785[10], of the Argenbright decision,

the court noted that the denial of a continuance is rarely reversible error, "[Y]et, the trial court enjoys neither an absolute nor an arbitrary discretion, and the court's action will be reversed if there has been an abuse of discretion. (Citing cases.)"

■ In this case, as noted, the introduction of Plaintiff's Exhibit 30, the compression x-ray, and the chart notation, Plaintiff's Exhibit 21, as changed, came as a surprise to appellants. They had not been supplied with the exhibits, and had no chance to produce evidence to meet them. That the admission of the exhibits, and Dr. Healy's changed testimony as to causation of the compression fracture, were prejudicial, is beyond question. It went to the nature and extent of respondent's compensable injuries occasioned to her by the skywalk collapse. The trial court prejudicially erred in failing to grant a continuance, or at least an adjournment, to give appellants the opportunity to have their medical expert examine Plaintiff's Exhibit 30, and further to examine respondent as to the source of the compression fracture of T–12. For this reason, the judgment must be reversed and the case remanded for new trial.

Other asserted points of error need not be addressed inasmuch as they may not arise on new trial, and because the parties are fully cognizant of the applicable law thereon by their briefing.

The judgment is reversed and the case is remanded for new trial.

All concur.