Gary COPELAND, Plaintiff/Appellant,

v.

MR. B's POOL CENTERS, INC.,
and Swim 'N Play, Inc., De-
fendants/Appellants.

No. 61528.

Missouri Court of Appeals,
Eastern District,
Division Four.

March 30, 1993.

James T. Buckley, Sedalia, for plaintiff.

K. Steven Jones, Lawrence Bovard Gre-
bel, St. Louis, for defendants.

CRAHAN, Judge.

Plaintiff Gary Copeland ("Plaintiff") ap-
peals from a judgment entered on a jury
verdict in favor of Defendants, Mr. B's
Pool Centers, Inc. ("Mr. B's") and Swim 'N
Play, Inc. ("Swim 'N Play"), in a products
liability action seeking damages for person-
al injuries suffered by Plaintiff when he
struck his head upon diving into a 3½ foot
deep, above-ground swimming pool. Plain-
tiff alleged that Mr. B's, the retailer of the
pool, and Swim 'N Play, the manufacturer,
failed to provide adequate warnings re-
garding the dangers associated with diving
into the pool. On appeal, Plaintiff asserts
two instances of error in the exclusion of
evidence. We affirm the judgment of the
trial court.

We view the evidence in the light most
favorable to the verdict, considering only
evidence that supports the verdict, and dis-
regarding contrary evidence and inferenc-
es. *Roark Motor Lodge Interval Sales
Corp. v. Lindner*, 779 S.W.2d 684, 686 (Mo.
App.1989). On August 3, 1987, Plaintiff
was invited by a friend, Tim Pigg, to swim
at the home of his parents-in-law, the Swaf-
fords. The Swafford's pool was a 4–foot
tall, 24–foot wide above-ground pool filled

with 3½ feet of water. Plaintiff was at least generally familiar with the pool because he had been in the Swafford's backyard on a prior occasion when he stood at the railing of the pool and spoke for a half hour to Mr. Swafford who was standing in the pool.

Shortly after arriving on August 3, 1987, Mr. Pigg and Plaintiff jumped into the pool and walked around and horseplayed in the pool for five minutes. Plaintiff and Mr. Pigg got out of the pool and onto the deck. Mr. Pigg dived back into the pool, surfaced, turned, and watched Plaintiff, who was wearing oversized sunglasses, dive from the deck into the pool. The sunglasses slipped on Plaintiff's face and he reached back to grab them causing him to dive deeper into the pool. Plaintiff hit his head on the bottom of the pool, broke his neck and was immediately rendered quadriplegic.

■ In his first point, Plaintiff contends that the trial court erred in excluding from evidence a corner cap from the pool bearing the raised instruction "Do Not Dive." At trial, Plaintiff sought to lay a foundation for admitting the corner cap on direct examination of Mrs. Swafford, co-owner of the pool. However, when asked whether the proffered exhibit was in the same or similar condition as it was on the date of the incident, Mrs. Swafford equivocated, observing that it was four years older. When Plaintiff then offered the exhibit, Swim 'N Play's counsel objected and obtained permission to conduct voir dire to clarify Mrs. Swafford's testimony.

In her testimony on voir dire, Mrs. Swafford explained that the corner cap was four years older, was worn and had changed somewhat because of exposure to the weather. Swim 'N Play's counsel also showed Mrs. Swafford a photograph of a corner cap and asked her which exhibit, the photograph or the worn cap itself, better represented the condition of the cap on the date of the incident. Mrs. Swafford testified unequivocally that the photograph was a better representation of the condition of the corner cap on the date in question. After listening to this testimony and exam-

ining both exhibits for itself, the trial court sustained the objection to admission of the corner cap.

Plaintiff urges that he laid an adequate foundation for admission of the corner cap because, prior to the voir dire, he was able to elicit testimony from Mrs. Swafford that the cap was in the "same or similar" condition as on the date of the incident. Relying on *Storm v. Ford Motor Co.*, 526 S.W.2d 875 (Mo.App.1975) and *Rinker v. Ford Motor Co.*, 567 S.W.2d 655, 662–63 (Mo.App. 1978), Plaintiff maintains that the wear and changes due to exposure noted by Mrs. Swafford merely affected the weight and not the admissibility of the exhibit.

■ Had the trial court admitted the exhibit, we might very well agree that the changes in the exhibit identified by Mrs. Swafford were not so great as to render the exhibit inadmissible as a matter of law. But in this case, the evidence was excluded. A trial court has considerable discretion in the exclusion of evidence and its action will not be grounds for reversal absent abuse of discretion. *Kelly v. Jackson*, 798 S.W.2d 699, 704 (Mo. banc 1990). Where evidence is excluded, the issue is not whether the evidence was "admissible," it is whether the trial court abused its discretion in excluding it. An "abuse of discretion" standard, by definition, means that, in many instances, the ruling of the trial court would be upheld regardless of whether the evidence had been admitted or excluded. The appellate court simply defers to the trial court in view of its superior opportunity to evaluate the proffered evidence in the context of the trial.

Neither *Storm* nor *Rinker* compel a finding that the trial court abused its discretion in this instance. *Storm* found an abuse of discretion where the trial court excluded a key item of evidence based on an erroneous view of the quantum of proof required to establish a chain of custody. *Rinker* found no abuse of discretion in admitting evidence despite a dispute about whether the condition of the item had significantly changed. Neither case purports to change the abuse of discretion standard consistently applied by Missouri courts.

Here, exclusion of the corner cap was not an abuse of discretion. Mrs. Swafford testified unequivocally that the corner cap had become worn due to exposure to the elements over a four year period. A photograph of the item was available which, in her view, better reflected the condition of the corner cap on the date in question. Although Plaintiff appears to have declined the opportunity to have the photograph admitted into evidence, this omission cannot properly be charged as error on the part of the trial court.

■ Plaintiff asserts in his second point on appeal that the trial court erred in excluding the deposition testimony of Michael Balek, the president of Mr. B's, because the testimony constituted admissions by a party-opponent and therefore was admissible. There are three requirements necessary to admit out-of-court statements as admissions of a party-opponent: 1) a conscious or voluntary acknowledgement by a party-opponent of the existence of certain facts; 2) the matter acknowledged must be relevant to the cause of the party offering the admission and; 3) the matter acknowledged must be unfavorable to, or inconsistent with, the position now taken by the party-opponent. *United Services of America, Inc., v. Empire Bank of Springfield*, 726 S.W.2d 439, 444 (Mo.App.1987); *Around The World Importing v. Mercantile*, 795 S.W.2d 85, 89 (Mo.App.1990).

■ What is missing here is the third element. At trial, Plaintiff sought to admit certain portions of Mr. Balek's deposition testimony as admissions to prove an element of his action for failure to warn, specifically that Mr. B's knew or should have known of the dangers of diving into pools. The deposition testimony offered was as follows:

"Q Now, have you ever read any articles in any of those concerning diving in [above-ground] pools and whether it is or is not dangerous?

....

A I've never read a study like that, no, sir.

Q How about in-ground pools?

A No, sir.

Q Have you ever read any articles that discuss the dangers of diving in either in-ground or above-ground pools?

....

A No, sir.

Q Have you formed any judgments yourself as to whether or not it is safe or unsafe to dive in an above-ground pool, of any size?

A No, sir.

Q You don't know whether it is or whether it is not; am I correct on that?

A Yes.

Q Would it make any difference to you if you did have an above-ground pool that was seven foot deep, such as your Doughboy pool, or whether or not it was a Doughboy pool that was constantly four foot deep? Would that change your judgment any?

A Absolutely not.

Q None whatsoever?

A None whatsoever.

Q And you don't have any judgment at all as to whether or not it's safe to dive in a four foot pool or whether it's safe to dive in a seven foot deep pool?

A No.

Q I'm sorry. That question was unnecessary. You told me you had not ever performed a dive in an above-ground pool.

And you have no judgment as to whether or not it can be safely done or not?

A Yes, sir.

Q Yes, sir, meaning I don't have a judgment?

A I don't have a judgment.

Q Okay. Thank you.

Do you have any judgment at all as to what would constitute the minimum depth that you would want before you would dive in an above-ground pool?

A No, I don't have any."

None of the offered testimony tended to show that Mr. Balek knew or should have known of the dangers of diving into pools.

Rather, Mr. Balek's deposition testimony indicated that he did not know of the dangers. This is the opposite of what Plaintiff was trying to prove with the testimony. Mr. Balek's testimony was not unfavorable to, or inconsistent with, the position taken by Mr. B's and therefore was properly excluded.

For the foregoing reasons, the judgment of the trial court is affirmed.

CARL R. GAERTNER, P.J., and CRANE, J., concur.